74 So.2d 360 (1954)
In re GLEASON's ESTATE.
REDFEARN
v.
BRUNSTETTER et al.
Supreme Court of Florida. En Banc.
July 30, 1954.
Rehearing Denied September 21, 1954.
*361 Redfearn & Ferrell, Miami, for appellant.
Roscoe Brunstetter and A. Chester Abney, Miami, for appellees.
TERRELL, Justice.
Susan Sheldon Gleason, a childless widow, died at Miami, Florida, March 3, 1951, at the age of 92. The last 21 months of her life she was an invalid, during which time nurses looked after her around the clock. July 19, 1948, prior to her invalidism, Mrs. Gleason executed a last will giving her residuary estate to collateral relatives. During the first nine months of her invalidism Mrs. Gleason was cared for at the Coral Gables Hospital and was looked after by a nurse named Catherine B. Cornwell. She was then sent home where she remained till her death and was taken care of by Mrs. Cornwell as head nurse. She was assisted at times by her daughter, Mrs. Jaytuna, and Mrs. Ruth L. Kenney. During Mrs. Gleason's invalidism Mrs. Cornwell prepared, or had prepared, for Mrs. Gleason a second will which left the residuary estate to Mrs. Cornwell and made Mrs. Gleason's kin mere token legatees. The will was executed February 25, 1951, five days before Mrs. Gleason's death.
March 5, 1951, Walter H. Sullivan and Martha Rogers, two of Mrs. Gleason's relatives, filed the will of July 19, 1948, in the probate court and petitioned that it be probated. March 12, 1951, a citation was issued to Mrs. Cornwell commanding her to produce the will of February 25, 1951 in order that its validity might be determined. At this point Mrs. Cornwell employed counsel to represent her, who filed petition to probate the latter will. Petitioners to the probate of the July 19, 1948 will answered Mrs. Cornwell's petition to probate the will of February 25, 1951, charging that it was void in that it was secured by undue influence and that Mrs. Gleason lacked testamentary capacity when she executed it. On consideration of both petitions, the probate judge held that Mrs. Gleason had testamentary capacity but that the will of February 25 was void because secured by undue influence. The judgment of the probate court was on appeal affirmed by the circuit court and the latter judgment was affirmed by this Court in Cornwell v. Sullivan, Fla., 63 So.2d 906.
April 23, 1953, following the proceedings thus detailed, Roscoe Brunstetter and A. Chester Abney, who had represented Mrs. Cornwell, petitioned the probate court to award them a suitable fee for their services, said fee to be paid from the estate of Mrs. Gleason. Said petition alleged that the services were necessary and valuable to the estate. To said petition an answer was filed by the Executor, denying the estate's liability for such fees. A notice was given, testimony was taken and the probate judge entered an order awarding petitioners a fee of $5,000. The probate judge further found that the will contest was vigorously and ably prosecuted, that eight hearings were conducted in which 761 pages of testimony were taken over a period of eleven weeks, that 28 witnesses were called, most of whom testified in more than one hearing. Oral arguments were heard and lengthy briefs were filed. The probate judge also found that petitioners acted in good faith, which was admitted by counsel for petitioners, to probate the will *362 of July 19, 1948, that their services were valuable and necessary to the estate which exceeded $280,000. The order of the probate court was on appeal affirmed by the circuit court. This appeal is from the decree of the circuit court affirming the order of the probate court.
The only point for determination is whether or not, under this state of facts, counsel representing Mrs. Cornwell in her attempt to probate the will of February 25, 1951, which was held to be void for undue influence, may be compensated for their services from the estate of the testator.
The record reveals that Mr. D.H. Redfearn of the Miami Bar was named Executor in both wills and that he had represented the testatrix for a long time. He repudiated the second will at the outset and refused to recognize it as valid. It is also shown that Mrs. Cornwell had no interest in the estate of Mrs. Gleason and that her counsel had a contingent arrangement with her by which they were to get nothing for their services in the event they failed to secure a decision favorable to their client. They contend, however, that they acted in good faith, that they were not aware of the circumstances under which the will was procured, that their services were valuable to the estate and that they are entitled to be compensated from it. They rely on In re Bernays' Estate, 150 Fla. 414, 7 So.2d 444, 140 A.L.R. 830, and Watts v. Newport, 150 Fla. 288, 7 So.2d 104, and Sections 732.14 and 734.01(2), F.S.A. to support their contention.
Appellant contends that the services of appellees' counsel were of no benefit to the estate whatever. He says that said services were in reality a detriment in that they caused prolonged litigation and delay in administering the estate under the valid will. Appellant further contends that even though counsel for appellees acted in good faith they cannot be compensated for their services from the estate when their client acted in bad faith. They rely on In re Graham's Estate, 156 Fla. 421, 23 So.2d 485; Id., 151 Fla. 209, 9 So.2d 417, and In re Wilmott's Estate, Fla., 66 So.2d 465. In view of these cases as construed in the light of Section 732.14(3), F.S.A., appellant contends that the probate judge and the circuit court totally misapprehended the legal effect of the evidence and their judgments should be reversed.
Section 734.01(2) F.S.A. provides:
"Any attorney who has rendered services to an estate or the personal representative may apply to the court by petition for an order making an allowance for attorney's fees, and, after notice to persons adversely affected, the court shall make such order with respect thereto as shall be proper."
The rule in this State is that an attorney who has rendered valuable services to an estate or its personal representative may be paid for such services by making application to the appropriate court and showing that his services benefitted the estate. If the services tend to break down, subtract from or dissipate the estate he cannot be compensated from it. So the question reduces itself to that of whether or not the services of counsel for Mrs. Cornwell benefitted Mrs. Gleason's estate. The probate judge and the chancellor found that counsel acted in good faith, that their services were valuable to the estate and that they should be paid.
We think as did the probate judge that the will of February 25, 1951 was void for undue influence and since services of appellees' counsel brought nothing to the estate as per their contract with Mrs. Cornwell they can claim nothing from it. The statutes and cases cited in the preceding paragraphs including appellees' contract with their client lead to this answer.
The judgment appealed from is therefore reversed.
Reversed.
THOMAS, SEBRING, HOBSON, MATHEWS and DREW, JJ., concur.
ROBERTS, C.J., dissents.
*363 ROBERTS, Chief Justice (dissenting).
The second will, even though ultimately found to be spurious prior to that litigation, constituted a cloud on title to the assets of the estate. Indeed, the estate thought so because the beneficiary of the second will was cited to bring it in for the purpose of adjudicating its validity or invalidity. It is difficult to believe that any reputable attorney would have accepted title to a parcel of real estate moving out of the estate without a judicial disposition of the second will. The probate court determined and found that the services of the attorneys rendered in connection with litigating the second will was of value to the estate and allowed them a fee. He was correct in so holding and his findings should not be disturbed.
I would affirm the judgment.