526 So.2d 730 (1988)
Lorraine C. TILLMAN, etc., Appellant,
v.
Virginia Savage SMITH, Appellee.
No. 87-1506.
District Court of Appeal of Florida, Fifth District.
May 26, 1988.
William L. Townsend, Jr. of Walton & Townsend, Palatka, for appellant.
A. August Quesada, Jr. of Wildt, Quesada & Walker, Jacksonville, and Ronald E. Clark, Palatka, for appellee.
DANIEL, Judge.
This is an appeal by Lorraine Tillman, as personal representative of the estate of Elmer Smith, from an order awarding attorney's fees in the amount of $193,250 to counsel for appellee Virginia Savage Smith, the widow of Elmer Smith. We reverse.
Lorraine Tillman was the first wife of Elmer Smith. After Lorraine and Elmer were divorced in the 1970's, Elmer took up residence with Virginia Savage.
In April 1980, Virginia and Elmer executed an antenuptial agreement in which the parties waived the right to take any interest, including the elective share, in the estate of the deceased spouse. The agreement also provided that Virginia would receive a life estate in the parties' homestead *731 if the parties were still married at the time of Elmer's death.
Elmer and Virginia were married shortly thereafter in May of 1980. In 1981, Elmer left Virginia, filed for dissolution of marriage and moved back in with Lorraine. In September of 1981, the divorce proceedings were dismissed and Elmer and Virginia reconciled. Some time later, Elmer was diagnosed as having cancer, left Virginia and returned once again to live with Lorraine.
On November 9, 1982, Elmer executed his Last Will and Testament. The will specifically referred to the antenuptial agreement and stated that Virginia waived any interest in Elmer's estate under its terms except that she was entitled to a life estate in the parties' homestead property. The will also devised what amounted to a fee simple interest in the homestead to Virginia. The remainder of the estate was devised to Lorraine. Elmer died on November 22, 1982.
The will was offered for probate and Virginia filed a motion to take her elective share as the surviving spouse. Lorraine, as the personal representative designated in the will, moved to strike Virginia's elective share motion on the basis that Virginia had waived all claims under the antenuptial agreement. The trial court denied the motion to strike and excluded a copy of the antenuptial agreement proffered in evidence by Lorraine. On appeal, this court held that the copy should have been admitted and reversed and remanded for further proceedings. Tillman v. Smith, 472 So.2d 1353 (Fla. 5th DCA 1985).
At the evidentiary hearing following remand, the attorney who drafted the antenuptial agreement testified that the copy proffered by the personal representative was identical to the copy of the agreement he had retained for his office file. The attorney who drafted the will testified that Elmer advised him to follow the terms of the antenuptial agreement. This attorney also pointed out that the fee simple bequest of the homestead was inconsistent with the terms of the antenuptial agreement but that Elmer said to go ahead and give it all to Virginia. In all other respects, the will was consistent with the antenuptial agreement. Glenn Stevens, an accountant, calculated the elective share to be $281,171 and testified that increasing the schedule for marital deductions by this amount would reduce estate taxes by about $96,000.
Virginia testified that upon their reconciliation in September of 1981 Elmer returned home with his things, sat down at the kitchen table and tore up the antenuptial agreement. She further testified that Elmer pushed the pieces of the agreement towards her and that she put them in the garbage. Virginia also testified that Elmer said that he loved her and that he was going to be with her the rest of his life. Elmer's sister was present when Elmer returned to Virginia and essentially corroborated Virginia's testimony.
Following this hearing, the trial court denied Lorraine's motion to strike and granted Virginia's petition to take the elective share. The trial court found that Virginia and Elmer had entered into a valid antenuptial agreement, that Elmer had freely and voluntarily abandoned the agreement by destroying it with the intent to abandon it and that Virginia had accepted the destruction of the agreement when she deposited the torn pieces in the garbage. The court also determined that the amount of the elective share was $281,171. The trial court's order was affirmed by this court without opinion. Tillman v. Smith, 504 So.2d 775 (Fla. 5th DCA 1987).
James Walker, one of Virginia's attorneys, later filed a petition for attorney's fees in which he alleged that he had been retained as co-counsel with Ronald Clark to assist Virginia in obtaining her elective share of the estate. Walker asserted that his legal services to the estate included tax advice to Glenn Stevens, the accountant for the estate, resulting in a tax savings to the estate of $70,000. Walker also alleged that the estate had benefited by his representation of Virginia because there had been a determination of the elective share and estate taxes had been reduced by approximately $96,000. Walker requested a fee of $30,000 for the tax advice rendered to the *732 estate and at least $82,500 for non-tax services rendered in perfecting Virginia's elective share of the estate.
At the hearing on the petition for attorney's fees, Walker and Clark argued that their representation of Virginia had benefited the estate by effecting a change in the distribution of the estate and enhancing the value of the estate by reducing its tax liability. The attorneys also argued that they had performed duties on behalf of Virginia, that is, petitioning for her elective share, which should have been done by the personal representative. Counsel for the personal representative argued that Virginia's attorneys were not entitled to fees from the estate because the elective share was a detriment to the estate and was contrary to the intent of the testator as expressed in his will. Following the discussion by the attorneys, the trial court concluded that Virginia was entitled to reasonable attorney's fees, that there had been a benefit to the estate through tax savings, and that the attorneys' efforts resulted in a change in the distribution of the will, that the decedent had destroyed the antenuptial agreement with the intention that it be of no force and effect and thus the elective share did not frustrate the testator's real intent.
The court then heard evidence to determine the services performed and the amount of the attorney's fees. Walker testified that he had advised Glenn Stevens, the accountant for the estate, about discounting mortgages and that such advice resulted in a tax savings to the estate. Walker could not separate his time on that issue from the other work that he had performed for Virginia. Walker testified that it was the responsibility of the personal representative to file a petition for the elective share for the surviving spouse and because Lorraine did not do so, he, on behalf of Virginia, was forced to file such petition. Walker also testified that Lorraine, as personal representative, had opposed the petition and had never made a good faith offer to settle. Walker further testified that through their efforts, the distribution of the estate was substantially changed as Virginia, who would have received less than two percent of the estate under the terms of the will, would now receive thirty percent of the estate. Walker claimed that he spent over 460 hours on the case. Clark testified that Walker's services were worth in the range of $200,000 and requested a fee of $30,000 for the services that he himself had performed.
Glenn Stevens, the accountant for the estate, testified that he received a refund for the estate in the amount of $70,000 based on advice given to him by Walker. Stevens testified that Walker had talked to him for about 15 to 20 minutes in giving this advice and later reiterated the advice in some letters to him.
Applying the criteria for awarding attorney's fees set out in Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985) the trial court concluded that this case required a high degree of skill and competency, that each step of the proceedings had been fully litigated, that it was a difficult case with less than an even potential for recovery and hence the contingency risk factor was significant. The court found that Clark had expended 14 hours in nonlitigation matters and that a reasonable hourly fee for this service was $100 per hour for a $1,400 fee. The trial court further found that Clark had spent 136 hours in litigation, that a reasonable hourly rate for this was $150 per hour and that the contingency risk multiplier was 1.5 for a fee of $30,600. The court, accordingly, found a reasonable attorney's fee to be paid Clark in the amount of $32,000. The court found that Walker had expended 430 hours on the case, that his requested hourly rate of $150 per hour was reasonable and that the contingency risk multiplier should be 2.5 for a total fee of $161,250. The attorney's fees, which totaled $193,250, were taxed against the estate.
The authority for allowing attorney's fees in an estate proceeding is found in section 733.106(3), Florida Statutes (1987):
Any attorney who has rendered services to an estate may apply for an order awarding attorney's fees, and after informal notice to the personal representative *733 and all persons bearing the impact of the payment the court shall enter its order on the petition.
In Heirs of Estate of Waldon v. Rotella, 427 So.2d 261 (Fla. 5th DCA 1983), this court noted that in order to be entitled to a reasonable attorney's fee from estate funds, the attorney's services must have been necessary for or beneficial to the probate estate. This court also recognized that attorneys other than attorneys for the personal representative may sometimes be entitled to compensation from estate funds where they render necessary or beneficial services for the estate.
In the present case the personal representative concedes that attorneys for the surviving spouse did perform some services that were beneficial to the estate by advising the estate's accountant on tax matters which resulted in a tax savings of $70,000 and thus they are entitled to a fee for that service. However, the personal representative argues that the attorneys for the surviving spouse are not entitled to a fee for services in obtaining the elective share for the surviving spouse as that was a detriment to the estate rather than a benefit.[1]
In support, the personal representative relies primarily on In re Binkow's Estate, 120 So.2d 15 (Fla. 3d DCA 1960). In that case, the widow of the decedent, who died intestate, elected to take dower and petitioned the probate judge to assign her dower in all the assets of the estate. The judge declined to assign dower in the decedent's interest to two partnerships which did business outside the State of Florida. On appeal, the court concluded that the widow was entitled to her dower interest in the partnerships. The court also held that the wife was not entitled to attorney's fees from the estate for services in connection with the petition for assignment of dower. "The service benefited the widow but not the estate; in fact, an allowance of dower depletes the estate." 120 So.2d at 19.
The personal representative also relies on cases which involve related issues. In Samuels v. Estate of Ahern, 436 So.2d 1096 (Fla. 4th DCA 1983), the personal representative filed an action for declaratory judgment to determine whether a bank account, jointly held by the decedent Lucia Ahern and Margaret Samuels, was a probate asset. A jury trial resulted in a verdict in favor of Mrs. Samuels. Mrs. Samuels then filed a motion for allowance of attorney's fees from the Ahern estate, claiming that the estate had benefited from the services of her counsel in the declaratory judgment suit. The trial court refused to award attorney's fees because the services of Mrs. Samuels' attorney did not result in any benefit to the Ahern estate. On appeal, the court affirmed this order explaining as follows:
Thus, an attorney who has rendered services to an estate may apply for an award of attorney's fees. This provision has been interpreted as requiring that the services benefit the estate... . The authorities are clear that the term, `benefit' as used in this context is not restricted to services that bring about an enhancement in value or an increase in the assets of the estate, but also includes services that are successful in simply effectuating the testamentary intention set forth in the will... .
Unlike most of the cases in which an attorney's fee has been allowed to one other than the attorney representing the personal representative, in the present case the declaratory judgment action was brought to determine who owned certain personal property, a bank account, which was not a probate asset and, thus, not a part of the estate. The account did not pass under the will and, thus, the decedent's testamentary intention, which is to be as gleaned from the express terms of the will, was not involved. The only feature of the declaratory litigation with any semblance of a relationship to the Ahern Estate proceedings is that the personal *734 representative of the Ahern Estate was the plaintiff.
The declaratory action did not involve the $25,000 bequest to Mrs. Samuels, and the will did not mention the bank account. The action did not affect the distribution of assets under the will; it had no effect upon the testamentary plan set forth therein. Thus, the conclusion is inescapable that the declaratory action in no way benefited the Ahern Estate. (citations omitted).
436 So.2d at 1097.
In Heirs of Estate of Waldon v. Rotella, Blanche Ray was appointed personal representative of the estate of Dorothy Waldon, her mother. Ray later filed a petition for bankruptcy and attorney Rotella was appointed trustee of the bankruptcy estate. The interest of Ray in the probate estate was eventually ordered to be distributed to Rotella as a trustee of the bankruptcy estate. Rotella was also appointed as a successor personal representative of the estate of Dorothy Waldon. Thereafter, he acted as personal representative of the probate estate, trustee in bankruptcy and attorney for himself in both capacities. On appeal from an award of attorney's fees to Rotella, this court held that the real focus of Rotella's actions were not necessary legal services on behalf of the estate and many were not performed with the intent to benefit the probate estate but rather to obtain money for the bankruptcy estate. Thus this court held that such services should be compensated by the bankruptcy estate rather than the probate estate.
Based on these cases, the personal representative argues that legal services to obtain the elective share depleted the estate and hence was not a benefit to the estate. The personal representative also argues that the actions were contrary to the intention of the testator who left his surviving spouse only a small fraction of his estate. Accordingly, the personal representative argues that the attorneys for the surviving spouse were not entitled to fees from the estate.
In response, Mrs. Smith, the surviving spouse, argues that, in addition to the tax savings conceded by the personal representative, her attorneys provided three distinct benefits to the estate: 1) her action established the destruction of the antenuptial agreement and thereby effected a change in the distribution of the estate; 2) the establishment of the elective share has assisted and resulted in the proper distribution of the estate in accordance with the decedent's actual intent and; 3) her actions fulfilled the duties of the personal representative by petitioning for and obtaining the elective share.
In support of her position, the surviving spouse relies primarily on Menz v. Estate of Menz, 381 So.2d 375 (Fla. 1st DCA 1980), In re Estate of Freedman, 340 So.2d 1275 (Fla. 3rd DCA 1977)[2] and Johnson v. Burleson, 61 So.2d 170 (Fla. 1952). The opinion in Menz v. Estate of Menz provides in its entirety as follows:
PER CURIAM.
The Order Determining Elective Share is hereby affirmed, except for its failure to award an attorney's fee to the widow. The personal representative had a duty to file a petition for and to pay the elective share in the case at bar. Rule 5.360, Rules of Probate and Guardianship (1979). The failure to do so necessitated the employment of counsel by the widow, and the attorney's efforts on the widow's behalf resulted in a change in the distribution of the will. See In Re Estate of Freedman, 340 So.2d 1275 (Fla. 3d DCA 1977).
Affirmed in part, reversed in part.
381 So.2d at 375.
At the hearing below, the attorney for the personal representative stated that he had contacted the attorneys in Menz and was told that Menz did not involve the question of entitlement to the elective share but only the question of payment of the elective share. Apparently, the personal representative in Menz failed to follow Florida Rules of Probate and Guardianship Procedure 5.360(b) which required the personal representative to file a petition to *735 determine the amount of the elective share. However, section 732.210, Florida Statutes, provides that the right to the elective share may be exercised by the surviving spouse or by the guardian of the property of the surviving spouse. Thus, the attorneys for Virginia were incorrect in asserting at the hearing below that they were performing duties of the personal representative in seeking to obtain the elective share. In fact, the personal representative appears to have had an affirmative duty to oppose the elective share as the will refers to the antenuptial agreement which in turn contained a waiver of the elective share.
In In re Estate of Freedman, Evelyn Freedman successfully brought an independent action to impress a constructive trust on legacies bequeathed by her deceased father to her two half sisters. Later, Freedman filed a petition in the probate court for attorney's fees to be paid by the estate. The petition was denied. On appeal, the court agreed that Freedman was not entitled to attorney's fees because her father's estate was not enhanced by her action. The distribution of his estate was not changed but rather a constructive trust was placed on the distributive shares of legatees by means of a separate action in the civil division of the circuit court. Here, the surviving spouse claims that the estate was enhanced because the distribution was changed and therefore, she is entitled to attorney's fees from the estate.
In Johnson v. Burleson, the husband E.L. Wartmann died leaving his estate in trust for the benefit of his wife Ada. When the wife died, the personal representative of her estate requested an accounting and distribution of income from the estate of the husband. The personal representatives of the two estates proposed different methods of accounting and distribution of income. The personal representative of the wife's estate ultimately prevailed. The Supreme Court held that the personal representative of the wife's estate was entitled to payment of attorney's fees from the estate of the husband because these services aided in carrying out the intentions of the husband as expressed in his will.
In sum, both parties agree that the estate is liable for attorney's fees if it is benefited. However, the parties differ in their interpretation of "benefit" and whether the estate here has been benefited. The personal representative's position appears to be that an estate is benefited only by carrying out the testator's intention as expressed in the will and that anything else, such as an elective share, would be contrary to the will and hence the person advancing that position would not be entitled to attorney's fees. On the other hand, the surviving spouse seems to take the position that any judicial determination, even if contrary to the express language of the testator's will, aids in the proper administration of the estate and hence benefits the estate.
Under the surviving spouse's theory, all law suits would be funded from the estate because any judicial determination would aid in the proper administration of the estate. The standard, however, for requiring an estate to pay attorney's fees is not that expansive. In the case of In re Graham's Estate, 156 Fla. 421, 23 So.2d 485 (Fla. 1945), the Florida Supreme Court noted that the statutory provision for attorney's fees seems to be a declaration of the equitable principle that an attorney who has been employed to obtain or create a fund for the joint benefit of all parties or whose efforts have enhanced the value of or resulted in preserving such a fund may, if successful in his efforts, have the right to be compensated from that fund for his services. And in In re Gleason's Estate, 74 So.2d 360 (Fla. 1954), the Florida Supreme Court noted that an attorney who has rendered valuable services to an estate may be paid for such services but if those services tended to break down, subtract from or dissipate the estate, he cannot be compensated from it. In both cases, the Florida Supreme Court held that parties who unsuccessfully attempted to probate a will of the decedent under which they were the main beneficiaries were not entitled to attorney's fees from the estate as those services were for their own benefit and not for the benefit of the estate.
In the present case, the elective share reduced the size of the estate by an amount *736 equal to thirty percent of the fair market value of all of the property of the decedent.[3] However, Virginia's share of her husband's estate apparently went from about two percent under the will to thirty percent when she chose the elective share. Thus the legal services in obtaining the elective share clearly benefited Virginia but depleted the estate.
The attorneys for Virginia are also not entitled to attorney's fees on the basis that they allegedly performed a duty for the personal representative. It is true that persons who successfully maintain legal proceedings to require a recalcitrant legal representative to perform his duties in that behalf do perform a valuable service to the estate and that the reasonable expenses incurred, including attorney's fees, are payable by the estate. In re DuVal's Estate, 174 So.2d 580 (Fla. 2nd DCA 1965). However, as noted above, the right to the elective share is exercisable by the surviving spouse. And, in the circumstances here where the will specifically referred to the antenuptial agreement which contained a waiver of the elective share, the personal representative was under a duty to challenge the claim of the elective share by the surviving spouse.
Finally, the attorneys for Mrs. Smith are not entitled to attorney's fees as they clearly thwarted the intention of the testator as expressed in his will. Attorney's fees have been awarded to parties who contest probate of a will, but in those cases, the final will of the decedent was determined and his estate properly divided and distributed to his intended beneficiaries. See, e.g., Segal v. Levine, 489 So.2d 868 (Fla. 3d DCA 1986); In re Estate of Griffis, 366 So.2d 80 (Fla. 4th DCA 1978); In re Jones' Estate, 352 So.2d 1182 (Fla. 2nd DCA 1977). Here Elmer Smith clearly intended the antenuptial agreement to control and intended for his surviving spouse to receive only a small interest in his estate. The court's conclusion below that the antenuptial agreement had been abandoned and the legal principle that once abandoned, the antenuptial agreement cannot be revived controls the result but it obviously did not reflect the intent of Elmer Smith.
The order determining and awarding attorney's fees is reversed and the cause remanded with directions to award attorney's fees for the services which resulted in tax savings to the estate.
REVERSED and REMANDED.
COBB and COWART, JJ., concur.
NOTES
[1] It should be noted that the personal representative has not challenged the reasonableness of the amount of attorney's fees.
[2] The Freedman and Menz cases were referred to by the trial judge in awarding fees.
[3] Section 732.207, Florida Statutes, provides for the amount of the elective share.