2003 ND 1

**George T. DUEMELAND, Plaintiff and Appellee,**

v.

**Judith NORBACK, Defendant and Appellant.**

No. 20020124.

Supreme Court of North Dakota.

Jan. 3, 2003.

Randall J. Bakke (argued), Smith Bakke Hovland & Oppegard, Bismarck, N.D., and Garry A. Pearson (on brief), Pearson Christensen, Grand Forks, N.D., for plaintiff and appellee.

Timothy D. Lervick, Rolfson Schulz Lervick & Geiermann Law Offices, P.C., Bismarck, N.D., for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1]   Judith Norback appealed from a summary judgment declaring George Duemeland to be the sole beneficiary under a Trust Agreement creating the Olga Duemeland Irrevocable Trust and under Lorin Duemeland's will.   We hold the Trust Agreement and Lorin Duemeland's will are ambiguous, and we reverse and remand for further proceedings.

I

[¶ 2]   Norback and George Duemeland are the children of Lorin and Olga Duemeland, and the question in this case involves the distribution of property in the Olga Duemeland Irrevocable Trust, which requires the interpretation of the Trust Agreement creating that trust and a power of appointment contained in Lorin Duemeland's will.

[¶ 3]   On August 21, 1984, Olga Duemeland, the settlor, executed a Trust Agreement which created the Olga Duemeland Irrevocable Trust and named George Duemeland and Lorin Duemeland as Trustees.   The Trust Agreement stated Olga Duemeland transferred property described in an attached exhibit to the Trustees contemporaneously with the execution and delivery of the Trust Agreement to the Trustees, and it authorized future additional transfers of property to the Trustees.   The exhibit attached to the Trust Agreement acknowledged the Trustees had received $20,000 in cash from Olga Duemeland.   The Trust Agreement designated the property described in the attached exhibit and any other property that may be transferred to the Trustees as the "Trust Estate."   This record includes a one million dollar life insurance policy designating Olga Duemeland as the insured and the Trustees as the policy owner and beneficiary.

[¶ 4] Norback and George Duemeland agree the trust was intended to keep life insurance proceeds out of Olga Duemeland's gross estate for federal estate tax purposes. The Trust Agreement contemplated the Trust Estate would not be includible in Olga Duemeland's gross estate for federal estate tax purposes and provided whatever part of the Trust Estate not includible in Olga Duemeland's gross estate for federal estate tax purposes would be administered and distributed under Article 8. Paragraph 8.1 of the Trust Agreement said "[w]hatever remains of the Trust Estate after the Settlor's death and after complying with the foregoing terms and provisions of this Trust Agreement (hereinafter for convenience called the 'FAMILY TRUST') shall be held by the Trustees, UPON TRUST, however, to be by them managed, administered and distributed as hereinafter set forth." Paragraph 8.2 authorized certain payments during Lorin Duemeland's lifetime. Paragraph 8.3 authorized distribution of the Family Trust and granted Lorin Duemeland a special testamentary power of appointment over the Family Trust, but said if he failed to exercise that power of appointment, the Family Trust would be distributed equally to Norback and George Duemeland.

[¶ 5] After a family disagreement, Lorin Duemeland executed a July 7, 1993 will that ostensibly disinherited Norback. *See Estate of Duemeland*, 528 N.W.2d 369, 370 (N.D.1995). Lorin Duemeland's will stated that, under paragraph 8.3 of the Trust Agreement creating the Olga Duemeland Irrevocable Trust, he exercised the special testamentary power of appointment over the principal and undistributed income of the Family Trust and directed the "principal and undistributed income of the FAMILY TRUST remaining at my death be paid over and distributed" to George Duemeland.

[¶ 6] Lorin Duemeland died on September 22, 1993, and Norback challenged his will on the grounds of lack of testamentary intent and undue influence. *Estate of Duemeland*, 528 N.W.2d at 370. She argued that although Lorin Duemeland executed the will, he "really didn't mean it; he was merely bluffing." *Id.* On appeal, we upheld the will, concluding because Norback conceded the will was properly executed and unambiguous, Lorin Duemeland's testamentary intent must be derived from the will and not from extrinsic evidence. *Id.* at 371. We said the consequence of Lorin Duemeland executing an unambiguous will was that it had a legal effect on his death, and it was irrelevant whether he harbored a secret intention that his actions would have no effect on the disposition of his estate. *Id.*

[¶ 7] Olga Duemeland died on April 27, 2001. Although this record does not include an inventory of the assets of the Trust Estate, the parties apparently agree that when she died, the Trust Estate included the one million dollar life insurance policy and minority interests in two businesses. George Duemeland brought this declaratory judgment action against Norback, claiming he was the sole beneficiary of the property in the Olga Duemeland Irrevocable Trust by virtue of Lorin Duemeland's will. Norback answered, claiming she and George Duemeland were each entitled to one-half of the principal and undistributed income of the Olga Duemeland Irrevocable Trust. The trial court granted George Duemeland summary judgment, declaring him to be the sole beneficiary of the Olga Duemeland Irrevocable Trust under the unambiguous language of the Trust Agreement and the power of appointment exercised by Lorin Duemeland in his will.

II

[¶ 8] Under N.D.R.Civ.P. 56(c), summary judgment is a procedure for

promptly and expeditiously disposing of an action without a trial if either litigant is entitled to judgment as a matter of law and if no dispute exists as to either the material facts or the inferences to be drawn from undisputed facts, or if resolving factual disputes will not alter the result. *Wahl v. County Mut. Ins. Co.,* 2002 ND 42, ¶ 6, 640 N.W.2d 689. Whether a trial court properly grants summary judgment is a question of law which we review de novo on the entire record. *Id.*

### III

[¶ 9] Norback argues the Trust Agreement creating the Olga Duemeland Irrevocable Trust unambiguously evidences Olga Duemeland's intent that Lorin Duemeland exercise his special testamentary power of appointment only if he survived her. Norback argues the Family Trust did not exist when Lorin Duemeland died, and his exercise of the power of appointment in his will was ineffective. Norback claims she is entitled to summary judgment declaring she and George Duemeland are each entitled to one-half of the principal and undistributed income of the Olga Duemeland Irrevocable Trust.

[¶ 10] The Trust Agreement said Minnesota law governed all questions of law arising under the Olga Duemeland Irrevocable Trust, and both parties agree North Dakota law governs the interpretation of Lorin Duemeland's will.

[¶ 11] Under Minnesota law, a court's purpose in construing a trust is to ascertain the settlor's intent from the instrument as a whole. *In re Trusteeship Under Agreement with Mayo,* 259 Minn. 91, 105 N.W.2d 900, 903 (1960). If a trust instrument is unambiguous, the settlor's intent must be ascertained from the language of the instrument without resort to extrinsic evidence. *Trust Created Under Agreement with McLaughlin,* 361 N.W.2d

43, 44–5 (Minn.1985); *In re Bush's Trust,* 249 Minn. 36, 81 N.W.2d 615, 620 (1957). A document is ambiguous when rational arguments can be made for different interpretations as to its meaning. *See Current Tech. Concepts, Inc. v. Irie Enter., Inc.,* 530 N.W.2d 539, 543 (1995); *Collins Truck Lines, Inc. v. Metropolitan Waste Control Comm'n,* 274 N.W.2d 123, 126 (Minn.1979). If a trust instrument is ambiguous, extrinsic evidence is admissible to determine the settlor's intent. *Bush's Trust,* at 620. Whether a document is ambiguous is a question of law. *Current Tech. Concepts,* at 543.

[¶ 12] Not unlike Minnesota law regarding construction of a trust, under North Dakota law, our primary goal in construing a will is to ascertain the testator's intent from the will as a whole. *See Matter of Estate of Brown,* 1997 ND 11, ¶¶ 15, 24, 559 N.W.2d 818. If the language of a will is clear and unambiguous, the testator's intent must be determined from that language without resort to extrinsic evidence. *Id.* at ¶ 16. A will is ambiguous if, after giving effect to each word and phrase, its language is susceptible to more than one reasonable interpretation. *Id.* at ¶ 15. If a will is ambiguous, a court may resort to extrinsic evidence to clarify the ambiguity. *Id.* Whether or not a will is ambiguous is a question of law. *Id.*

[¶ 13] The Trust Agreement creating the Olga Duemeland Irrevocable Trust specified that contemporaneously with the execution and delivery of the Trust Agreement, Olga Duemeland delivered certain properties, described in an attached exhibit, to the Trustees. In an exhibit attached to the Trust Agreement, the Trustees acknowledged receipt of $20,000 in cash from Olga Duemeland. The Trust Agreement defined the "Trust Estate" as the property described in the attached exhibit and "any other property, rights and claims which

may be transferred, assigned and delivered to the Trustees." The Trust Agreement further provided the Trust Estate would be held and disposed of by the Trustees as thereinafter provided.

[¶ 14] Paragraph 4.3 of the Trust Agreement provided for disposition of the Trust Estate upon Olga Duemeland's death and generally contemplated the assets of the trust would not be includible in Olga Duemeland's gross estate for federal estate tax purposes. Paragraph 4.3 further provided the part of the Trust Estate not includible in Olga Duemeland's gross estate for federal estate tax purposes would be administered and distributed under Article 8 of the Trust Agreement, and any part of the Trust Estate includible in her gross estate for federal estate tax purposes would be administered and distributed under Articles 5, 6, 7, and 8 of the Trust Agreement.

[¶ 15] Under Article 5 of the Trust Agreement, if Lorin Duemeland survived Olga Duemeland, the part of the Trust Estate included in Olga Duemeland's gross estate for federal estate tax purposes was set aside in the Lorin E. Duemeland Trust and administered and managed under Article 6. Under paragraph 5.3 of the Trust Agreement, if Lorin Duemeland did not survive Olga Duemeland, the part of the Trust Estate not included in Olga Duemeland's gross estate for federal estate tax purposes was added to the Family Trust and held, managed, administered, and distributed under Article 8 of the Trust Agreement. Article 6 generally provided for administration of the Lorin E. Duemeland Trust created under Article 5. Article 7 generally provided for payment of estate taxes on the part of the Trust Estate includible in Olga Duemeland's gross estate for federal estate tax purposes.

[¶ 16] The parties agree no part of the Trust Estate was includible in Olga Duemeland's gross estate for federal estate tax purposes, and the Trust Estate therefore was to be held, managed, administered and distributed under Article 8 of the Trust Agreement.

[¶ 17] Paragraph 8.1 of the Trust Agreement stated "[w]hatever remains of the Trust Estate after the Settlor's death and after complying with the foregoing terms and provisions of this Trust Agreement (hereinafter for convenience called the 'FAMILY TRUST') shall be held by the Trustees, UPON TRUST, however, to be by them managed, administered and distributed as hereinafter set forth." Paragraph 8.2 authorized various payments to Lorin Duemeland and to Olga Duemeland's issue during Lorin Duemeland's lifetime. Paragraph 8.3 authorized payments after Lorin Duemeland's death or after Olga Duemeland's death if he did not survive her, and granted him a special testamentary power of appointment:

8.3 *Payments after the death of the Settlors's husband.* Upon the death of the Settlor's husband (or upon the death of the Settlor if her husband does not survive her), the Trustees shall pay over and distribute whatever then constitutes the FAMILY TRUST, including principal and all undistributed income, to or hold the same for the benefit of, such of the group consisting of the Settlor's children and their issue, in such amounts and proportions and for such estates and interests and outright or upon such terms, trusts, conditions and limitations as the Settlor's husband shall appoint by a will referring specifically to the power herein granted to him;

Paragraph 8.3 further provided if Lorin Duemeland failed to exercise the power of appointment, the Trustees were to distribute the principal and undistributed income of the trust equally to Norback and to George Duemeland.

[¶ 18]   Lorin Duemeland's July 7, 1993 will provided:

> 4.2   *Exercise of special power of appointment.*   By the terms and provisions of Paragraph 8.3 of Article 8 of that certain Trust Agreement Creating the Olga Duemeland Irrevocable Trust dated August 24[sic], 1984, by and between my spouse, OLGA DUEMELAND, as Settlor, and myself and my son, GEORGE T. DUEMELAND, as Trustees, I am given a special testamentary power of appointment over the principal and undistributed income of the FAMILY TRUST created under said Trust Agreement.   Pursuant thereto, I hereby exercise said special testamentary power of appointment and direct that the principal and undistributed income of the FAMILY TRUST remaining at my death be paid over and distributed to my son, GEORGE T. DUEMELAND,

[¶ 19]   Norback argues Olga Duemeland did not intend to give Lorin Duemeland a special testamentary power of appointment if he did not survive Olga Duemeland, and even if Olga Duemeland intended to give Lorin Duemeland that power, he did not exercise it in a manner which entitled George Duemeland to receive all the principal and income of the Family Trust remaining at Olga Duemeland's death.   Norback argues because the "Trust Estate" did not become the "Family Trust" until after Olga Duemeland's death, Lorin Duemeland was not given the power of appointment over the "Family Trust" until Olga Duemeland's death, and he could not exercise that power of appointment if he predeceased her.   Norback argues the phrase in paragraph 8.3, "[u]pon the death of the Settlor's husband (or upon the death of the Settlor if her husband does not survive her)," refers to the timing of the distribution of the principal and undistributed income of the Family Trust.   Norback argues even if Olga Duemeland intended to give Lorin Duemeland a power of appointment if he predeceased her, his will unambiguously failed to exercise that power, because his will said he exercised of the power over the "principal and undistributed income of the FAMILY TRUST remaining at my death" and the Trust Agreement authorized distribution at Olga Duemeland's death of "whatever then constituted the FAMILY TRUST."

[¶ 20]   George Duemeland responds the Trust Agreement unambiguously authorized Lorin Duemeland to exercise the power of appointment if Lorin Duemeland predeceased Olga Duemeland, and Lorin Duemeland exercised that power of appointment in his will.   George Duemeland argues the phrase "[u]pon the death of the Settlor's husband (or upon the death of the Settlor if her husband does not survive her)" evidences Olga Duemeland's intent to grant Lorin Duemeland a power of appointment whether or not he survived her. George Duemeland argues the term "Family Trust" describes Olga Duemeland's existing "Trust Estate" at her death, which the Trust Agreement thereafter referred to as the Family Trust for convenience. George Duemeland argues Lorin Duemeland's exercise of the power of appointment before Olga Duemeland's death was not invalid merely because the assets could not be distributed until Olga Duemeland's death.

■   [¶ 21]   We conclude both parties have made rational arguments for different interpretations of the Trust Agreement and Lorin Duemeland's will.   Paragraph 8.1 of the Trust Agreement authorizes the Trustees to distribute "[w]hatever remains of the Trust Estate after the Settlor's death and after complying with the foregoing terms and provisions of this Trust

Agreement (hereinafter for convenience called the 'FAMILY TRUST') . . . as hereinafter set forth." Paragraph 8.3 applies "[u]pon the death of the Settlor's husband (or upon the death of the Settlor if her husband does not survive her)" and authorizes the Trustees to "distribute whatever then constitutes the FAMILY TRUST" in amounts and upon terms as Lorin Duemeland shall appoint "by a will referring specifically to the power herein granted to him." Lorin Duemeland's will identified paragraph 8.3 of the Trust Agreement creating the Olga Duemeland Irrevocable Trust and directed the "principal and undistributed income of the FAMILY TRUST remaining at my death be paid over and distributed" to George Duemeland. When read as a whole, those provisions reasonably can be construed to authorize Lorin Duemeland to exercise the power of appointment if he predeceased Olga Duemeland. However, we also believe those provisions reasonably can be construed to create the Family Trust from the Trust Estate "after" Olga Duemeland's death and to preclude Lorin Duemeland from exercising the power of appointment over the Family Trust if he predeceased Olga Duemeland. The Trust Agreement and Lorin Duemeland's will are also susceptible to more than one reasonable interpretation regarding whether or not Olga Duemeland intended to give Lorin Duemeland a power of appointment over "whatever then constitutes the FAMILY TRUST" if he did not survive her, and if so, what Lorin Duemeland intended by directing the distribution of the Family Trust "remaining at my death" to George Duemeland. We conclude those documents, when read together, are ambiguous,[1] and we reject Norback's claim that Lorin Duemeland's exercise of the power of appointment was ineffective as a matter of law.

[¶ 22] Even if Olga Duemeland intended to give Lorin Duemeland a power of appointment over "whatever then constitutes the FAMILY TRUST" if he did not survive her, Lorin Duemeland's will distributed the Family Trust "remaining at my death" to George Duemeland. Although George Duemeland claims the property in the Trust Estate at Lorin Duemeland's death is the same property in the Family Trust at Olga Duemeland's death, this record does not include an inventory of the assets of the Trust Estate when Lorin Duemeland died, or when Olga Duemeland died. A determination of those issues may be necessary to resolve the distribution issues raised in this case.

[¶ 23] Because we conclude the Trust Agreement and Lorin Duemeland's will, when read together, are ambiguous, we decline George Duemeland's invitation to rule as a matter of law that extrinsic evidence in affidavits presented in the motion for summary judgment to the trial court established he was the sole beneficiary of the Olga Duemeland Irrevocable Trust. Moreover, we also decline to address any issues that may have arisen after this appeal was filed.

1. Although Norback conceded Lorin Duemeland's will was unambiguous in the context of her challenge to the validity of the will on the grounds of lack of testamentary intent and undue influence, issues about the interpretation of the Trust Agreement and the power of appointment in Lorin Duemeland's will were not litigated and determined in Norback's prior challenge to the will. *See Estate of Dueme-* *land,* 528 N.W.2d at 370–71. Our decision in *Duemeland* does not preclude Norback from raising issues about the interpretation of the Trust Agreement and the power of appointment in Lorin Duemeland's will. *See Hofsommer v. Hofsommer Excavating, Inc.,* 488 N.W.2d 380, 383 (N.D.1992) (defining res judicata and collateral estoppel).

[¶ 24] We reverse and remand for proceedings consistent with this opinion.

[¶ 25] DONOVAN FOUGHTY, D.J., WILLIAM A. NEUMANN, DALE V. SANDSTROM, and MARY MUEHLEN MARING, JJ., concur.

[¶ 26] The Honorable DONOVAN JOHN FOUGHTY, D.J., sitting in place of KAPSNER, J., disqualified.