2012 ND 29

**In the Matter of the ESTATE OF Maurice M. WICKLUND, deceased**

**Betty J. Wicklund, Petitioner and Appellee,**

v.

**Brian Wicklund and Deborah Williams, Respondents and Appellants.**

**No. 20110081.**

Supreme Court of North Dakota.

Feb. 17, 2012.

Kathleen Key Imes (argued), Williston, N.D., and Christopher T. Lindsay (on brief), Northville, MI, for petitioner and appellee.

Elizabeth Ledgerwood Pendlay (argued), Crosby, N.D., and Toni Marie Sandin (on brief), Fargo, N.D., for respondents and appellants.

MARING, Justice.

[¶ 1] Brian Wicklund and Deborah Williams, the surviving children of Maurice Wicklund, appeal from an order granting a petition by Maurice Wicklund's surviving spouse, Betty Wicklund, for an elective share, a homestead allowance, an exempt property allowance, a family allowance, personal representative fees, and administration costs from Maurice Wicklund's estate. The surviving children claim their father intended to transfer North Dakota mineral interests to them under a will and Trust agreement, and they argue the district court erred in failing to address issues relating to their father's intent and erred in granting the surviving spouse an elective share, a homestead allowance, an exempt property allowance, a family allowance, personal representative fees, and administration costs from Maurice Wicklund's estate. We conclude the district court's decision effectuates Maurice Wicklund's intent from the plain language of his will and the Trust, but the court's findings are inadequate to explain the bases for granting Betty Wicklund an elective share, administration costs, and personal representative fees. We reverse and remand for further proceedings.

I

[¶ 2] When Maurice Wicklund died at the age of 94 in September 2009, he owned mineral interests in Sargent, Mountrail, Burke, and Divide Counties in North Dakota, and he and Betty Wicklund were domiciled in Michigan, near Betty Wicklund's daughter from a prior marriage, Sandra Miller. Maurice and Betty Wicklund had been married for 16 years, and

they had no children together. Maurice Wicklund's survivors included Miller and his two adult children from a prior marriage, Brian Wicklund and Deborah Williams.

[¶ 3] On August 22, 2006, Maurice and Betty Wicklund executed a joint estate plan, including Maurice Wicklund's will and the Maurice M. Wicklund and Betty J. Wicklund Living Trust. There were no amendments to Maurice Wicklund's will or to the Trust before his death. Maurice Wicklund's will appointed Betty Wicklund as his personal representative, directed his personal representative to pay his debts and the expenses of his last illness, devised his personal property to Betty Wicklund, and devised the residue of his estate to Betty Wicklund, as trustee of the Living Trust, to be disposed of as provided in the Trust agreement. His will directed the trustee to comply with the provisions of the Trust agreement for payment of expenses of administration, allowances, and claims allowed. His will also stated that he had not forgotten Brian Wicklund and Deborah Williams and had intentionally omitted to provide for them.

[¶ 4] The Living Trust named Maurice and Betty Wicklund as the trust settlors and appointed the settlors, or either of them, as trustee. The Trust allowed the settlors to make contributions to the Trust, but the record does not reflect any conveyances to the Trust during Maurice Wicklund's lifetime. The Trust generally granted the trustee authority over any property held by the Trust and authorized the trustee to disburse income and principal as directed by the settlors during their lifetime, or by the surviving settlor during his or her lifetime. The Trust authorized the trustee "to pay all expenses of administration, allowances, and claims allowed in the estate of either" settlor, and if there was no estate subject to probate adminis-

tration, "to pay all expenses, allowances, and claims pertaining to settlor's estate related to the non-probate estate" of either settlor. The Trust explicitly authorized the settlors to amend or revoke the Trust during their lifetime and also authorized the surviving settlor to amend or revoke the Trust after the death of the other settlor.

[¶ 5] The Trust also included language for the disposition of property and provided:

*ELEVENTH:*

A. Upon the death of settlor husband, Maurice M. Wicklund, if his son, Brian M. Wicklund, is then surviving, trustee shall distribute to him settlor husband's 1.26 carat diamond gold ring and Rolex wristwatch, and if settlor husband's son, Brian M. Wicklund, is not then surviving, this gift shall lapse and be distributed according to the provisions of paragraph TWELFTH below.

B. Any and all interest of settlor, or either of the persons herein designated as settlor, or this trust, in and to oil, gas and other minerals in and under and that may be produced from the following described lands, located in the State of North Dakota, to-wit:

[land description for mineral interests in Mountrail, Burke, and Divide Counties]

to settlor husband's son, Brian M. Wicklund, and settlor husband's daughter Deborah Ann Williams, as tenants in common.

*TWELFTH:*

Upon the death of the survivor of the persons herein designated as settlor, trustee shall hold, administer, and dispose of the entire remaining corpus and undistributed income of this trust, after the payment of taxes and expenses, to settlor wife's daughter, Sandra S. Miller, if she is then surviving, and if she is not

then surviving, to the following persons in the following proportions:

A. Settlor wife's rings and watches to her daughter-in-law, Benjawan Miller, if she is then surviving, and if she is not then surviving, this gift shall lapse and be paid to the person or persons who take under sub-paragraph B. below, proportionately;

B. All the rest, residue, and remainder to the following persons in the following proportions:

1. Fifty percent (50%) equally to the members of the class composed of settlor husband's children, Brian M. Wicklund and Debra [sic] Ann Williams, the issue of any deceased child to take his, her, or their parents share, by right of representation;

2. Fifty percent (50%) equally to the members of the class composed of settlor wife's children, Randall Richard Miller and Bill Lew Miller, the issue of any deceased child to take his, her, or their parents share, by right of representation.

The parties agree that Maurice Wicklund did not convey his North Dakota mineral interests to the Trust during his lifetime.

[¶ 6] In April 2010, Maurice Wicklund's will was admitted for informal probate in North Dakota, and Betty Wicklund was appointed his personal representative. Betty Wicklund thereafter petitioned the North Dakota probate court for an elective share of $67,000 under Michigan law, a homestead allowance of $20,000 under Michigan law, an exempt property allowance of $13,000 under Michigan law, a family allowance of $24,000 under Michigan law, her fees as a personal representative in a reasonable amount, and reimbursement in an amount exceeding $30,000 for costs of administration, attorney fees, and last illness, funeral, medical, and hospital expenses. According to Betty Wicklund, before Maurice Wicklund's death, they hired a lawyer to apply for Medicaid for him and to set up a "Medicaid exemption trust," which was funded with "what little money [they] had left ... approximately $14,000." Betty Wicklund claimed that Maurice Wicklund's North Dakota mineral interests disqualified him for Medicaid benefits and he died before he became eligible for those benefits. According to Betty Wicklund, Maurice Wicklund had "no estate in Michigan" when he died and the couple had "no testamentary assets and only a little bit of money left in the Medicaid trust[, t]he house [they] lived in was bought and paid for by ... Miller[, and t]he only thing he had were some small items of personal property." Miller also indicated that Maurice Wicklund did not have any property in Michigan when he died, and the parties stipulated that no probate proceedings were undertaken in Michigan. Betty Wicklund claimed the value of Maurice Wicklund's mineral interests when he died was $37,260, and for her claims, she sought an in-kind distribution of those interests to the exclusion of Brian Wicklund and Deborah Williams.

[¶ 7] Brian Wicklund and Deborah Williams opposed Betty Wicklund's petition, claiming their father's testamentary intent was memorialized in his will and in the Trust. They asserted they were entitled to his North Dakota mineral interests in Divide, Burke, and Mountrail Counties, but because the Trust did not include language for disposition of the Sargent County mineral interests, they have not claimed an interest in those minerals.

[¶ 8] At a hearing on Betty Wicklund's petition, the district court stated the will and the Trust spoke for themselves and any proffered testimony about Maurice Wicklund's intent was not relevant. After the hearing, the district court issued a written order granting Betty Wicklund's

petition for an elective share of $67,000 plus one-fourth of the estate under Mich. Comp. Laws § 700.2202, a homestead allowance of $20,000 under Mich. Comp. Laws § 700.2402, an exempt property allowance of $13,000 under Mich. Comp. Laws § 700.2404, and a family allowance of $24,000 under Mich. Comp. Laws § 700.2403. The court also awarded Betty Wicklund personal representative fees in a "reasonable amount" under N.D.C.C. § 30.1–18–19 and reimbursement for costs of administration, attorneys fees, and last illness, funeral, medical and hospital expenses in an amount exceeding $30,000 under N.D.C.C. § 30.1–19–05. The court awarded Betty Wicklund title to Maurice Wicklund's North Dakota mineral interests in Divide, Burke, Mountrail, and Sargent Counties to the exclusion of his surviving children as an in-kind payment for her allowances and claims, which the court found exceeded the current fair market value of $138,500 for the mineral interests.

## II

■ [¶ 9] Brian Wicklund and Deborah Williams argue the district court erred in granting Betty Wicklund's petition for an elective share, a homestead allowance, an exempt property allowance, a family allowance, her fees as personal representative, and reimbursement for costs and expenses of administration of the estate. They argue the court erred in failing to address issues relating to their father's intent to transfer the mineral interests to them, which they claim was clearly and unambiguously expressed in his will and the Trust. They claim the Trust is a valid written contract and the court should have enforced the Trust language passing the mineral interests to them. They also argue the court erred in not granting an implied resulting trust to carry out their father's intent.

■ [¶ 10] We initially consider the arguments about Maurice Wicklund's intent. The Trust explicitly states the "laws of the State of Michigan shall govern the validity, interpretation, and administration thereof." Where, as here, a will and a Trust form part of the same estate plan, Michigan and North Dakota courts construe the documents together. *See Bullis v. Downes,* 240 Mich.App. 462, 612 N.W.2d 435, 439 (2000); *Duemeland v. Norback,* 2003 ND 1, ¶ 23, 655 N.W.2d 76. *See also In re Estate and Trust of Anderson,* 654 N.W.2d 682, 687 (Minn.Ct.App.2002) (citing "ample authority for the proposition that, where a will and a trust form part of the same estate plan, they must be construed together").

■ [¶ 11] Michigan law for construing trusts and wills is similar to North Dakota law. *See* Mich. Comp. Laws §§ 700.2602–700.2722 and N.D.C.C. chs. 30.1–09 and 30.1–09.1. Michigan courts construe wills and trust agreements to carry out the intent of the settlor or testator, which is similar to rules of construction used by North Dakota courts. *See Matter of Maloney Trust,* 423 Mich. 632, 377 N.W.2d 791, 793 (1985); *In re Kostin,* 278 Mich.App. 47, 748 N.W.2d 583, 589 (2008); *In re Estate of Reisman,* 266 Mich.App. 522, 702 N.W.2d 658, 661–62 (2005); *In re Nowels Estate,* 128 Mich.App. 174, 339 N.W.2d 861, 863 (1983); *Investors Title Ins. Co. v. Herzig,* 2010 ND 169, ¶ 9, 788 N.W.2d 312; *Paulson v. Paulson,* 2010 ND 100, ¶ 22, 783 N.W.2d 262; *Langer v. Pender,* 2009 ND 51, ¶ 13, 764 N.W.2d 159; *Duemeland,* 2003 ND 1, ¶ 12, 655 N.W.2d 76. The intent of the settlor or the testator is gleaned from the language of the documents, as a whole, unless the language is ambiguous. *Maloney,* at 793; *Detroit Bank and Trust Co. v. Grout,* 95 Mich. App. 253, 289 N.W.2d 898, 905 (1980); *Langer,* at ¶ 13; *Duemeland,* at ¶¶ 11–12.

A document is ambiguous if it is susceptible to more than one reasonable interpretation, and if the document is ambiguous, a court may resort to extrinsic evidence or surrounding circumstances to construe the document. *Maloney*, at 793; *Duemeland*, at ¶¶ 11–12. Whether a document is ambiguous is a question of law. *Langer*, at ¶ 13; *Duemeland*, at ¶ 12.

[¶ 12] Maurice Wicklund's will "direct[ed] that all [his] just debts and expenses of [his] last illness and funeral be paid by [his] personal representative as soon after [his] death as may be reasonably convenient and practicable." His will devised his personal property to Betty Wicklund and the residue and remainder of his estate to her as trustee of the couple's Living Trust, with instructions to commingle the residue with Trust property and to administer and dispose of the property as provided in the Trust. Maurice Wicklund's will further directed compliance with the language of the Trust for payment of expenses of "administration, allowances, [and] claims allowed." His will stated he had "not forgotten [his] children, Brian M. Wicklund and Deborah Ann Williams, and have intentionally omitted to provide for them" in the will. Maurice Wicklund's will explicitly referenced the Trust, which evidences an intent for those documents to be considered together as part of his estate plan. *See Bullis*, 612 N.W.2d at 439; *Duemeland*, 2003 ND 1, ¶ 23, 655 N.W.2d 76.

[¶ 13] The Trust named Maurice and Betty Wicklund as the settlors for the Trust and designated them as trustee with sole responsibility for administration of the Trust estate, but designated Sandra Miller as trustee if the settlors were not able to act as trustee. The Trust authorized the trustee to "hold, manage, administer, invest, reinvest, and distribute the original investment together with addi-tions and accumulations in accordance with the terms" of the Trust. During the lifetime of both settlors, the Trust authorized the trustee to distribute income and principal as directed by the persons designated as settlor, and during the lifetime of the surviving settlor, the Trust authorized the trustee to distribute income and principal as directed by the surviving settlor. The Trust further authorized the settlors, or the surviving settlor, to amend or revoke the Trust at any time by giving written notice to the trustee and also authorized the trustee to "pay all expenses of administration, allowances, and claims allowed in the estate of either of the parties herein designated as settlor, and, if there is no such estate subject to probate administration, trustee is authorized to pay all expenses, allowances, and claims pertaining to settlor's estate related to the non-probate estate of either of the parties herein designated as settlor."

[¶ 14] The Trust also included language conveying two items of Maurice Wicklund's personal property to Brian Wicklund upon Maurice Wicklund's death, and a separate provision dealing with the North Dakota mineral interests:

Any and all interest of settlor, or either of the persons herein designated as settlor, or this trust, in and to oil, gas and other minerals in and under and that may be produced from the following described lands, located in the State of North Dakota, to wit:

[land description for mineral interests in Mountrail, Burke, and Divide Counties] to settlor husband's son, Brian M. Wicklund, and settlor husband's daughter, Deborah Ann Williams, as tenants in common.

Upon the death of the surviving settlor, the Trust authorized the trustee to dispose of the remaining corpus and undistributed income to Miller, if she survived, and to

other designated heirs if Miller did not survive the surviving spouse.

[¶ 15] The parties agree that Maurice Wicklund did not convey his mineral interests to the Trust during his lifetime, and nothing in the plain language of the will or the Trust, when read together, indicates he necessarily intended to transfer the minerals to the Trust while he was alive. *See Chebatoris v. Moyer,* 276 Neb. 733, 757 N.W.2d 212, 214–17 (2008) (settlor purported to fund trust with real and personal property described in document attached to trust and court held trust operated as deed transferring property to trust). Rather, Maurice Wicklund's will provided a pour-over mechanism upon his death for the mineral interests to transfer to the Trust through the residue of his estate to be administered and disposed of in the manner provided in the Trust. The plain language for administration of the Trust provides for a revocable trust during the lifetime of both Maurice and Betty Wicklund, or the surviving spouse to provide them with income and principal from the Trust during their lifetimes. That plain language further provides for payment of all administration expenses, allowances, and claims relating to the probate or non-probate estate of either settlor.

[¶ 16] The plain language of the will and the Trust, construed together, evidences an intent to pay administration costs and expenses, allowances, and claims allowed in the estate of either settlor, or if there was no estate subject to probate administration, to pay all expenses, allowances, and claims related to the non-probate estate before triggering any specific conveyance of Maurice Wicklund's mineral interests. The language creating a revocable trust during the lifetime of both settlors, or during the lifetime of the surviving settlor further evidences the settlors' intent to provide for a surviving settlor

during his or her lifetime. The plain language distributed upon his death, the plain language of the will and the Trust permits the settlors, or the surviving settlor, to use the property in the Trust for their benefit and at their discretion during their lifetime. The Trust language pertaining to the mineral interests does not explicitly require distribution upon Maurice Wicklund's death; rather, the language for the minerals refers to the disposition of "[a]ny and all interest of settlor, or either of the persons herein designated as settlor, or this trust." We construe the language of the Trust, as a whole, to evidence an intent to subject the mineral interests to the Trust provisions during the lifetime of the surviving settlor, including the language authorizing the trustee to distribute the original investment together with additions and accumulations in accordance with the Trust and as directed by the persons designated as settlor or the surviving settlor and the language directing the trustee to pay all expenses of administration, allowances, and claims allowed in the probate estate or non-probate estate of either of the persons designated as settlor.

[¶ 17] Our interpretation is consistent with the district court's statement that the documents spoke for themselves and the court's ultimate decision reflects the court's interpretation of the plain language of the will and Trust in a manner consistent with that intent. That interpretation is also consistent with the language of Mich. Comp. Laws § 700.3101, which is virtually identical to N.D.C.C. § 30.1–12–01 (U.P.C. § 3–101), and provides:

An individual's power to leave property by will, and the rights of creditors, devisees, and heirs to his or her property, are subject to the restrictions and limitations contained in this act to facilitate the prompt settlement of estates. Upon an individual's death, the decedent's property devolves to the persons

to whom the property is devised by the decedent's last will or to those indicated as substitutes for them in cases involving lapse, disclaimer, or other circumstances affecting the devolution of testate estate, or in the absence of testamentary disposition, to the decedent's heirs, or to those indicated as substitutes for them in cases involving disclaimer or other circumstances affecting devolution of an intestate estate, *subject to homestead allowance, family allowance, and exempt property, to rights of creditors, to the surviving spouse's elective share, and to administration.*

[¶ 18] That interpretation is also consistent with Michigan law in effect when the Wicklunds executed their estate plan and when Maurice Wicklund died. *See* Mich. Comp. Laws §§ 700.3805 and 700.7501(1), currently recodified at 700.7605(1) with minor changes not relevant to this case. Section 700.3805, Mich. Comp. Laws, identified the priority of claims for the probate of an estate and provided, in part:

(1) If the applicable estate property is insufficient to pay all claims and allowances in full, the personal representative shall make payment in the following order of priority:

(a) Costs and expenses of administration.

(b) Reasonable funeral and burial expenses.

(c) Homestead allowance.

(d) Family allowance.

(e) Exempt property.

(f) Debts and taxes with priority under federal law.

(g) Reasonable and necessary medical and hospital expenses of the decedent's last illness, including a compensation of persons attending the decedent.

(h) Debts and taxes with priority under other laws of this state.

(i) All other claims.

. . . .

(3) If there are insufficient assets to pay all claims in full or to satisfy homestead allowance, family allowance, and exempt property, the personal representative shall certify the amount and nature of the deficiency to the trustee of a trust described in section 7501(1) for payment by the trustee in accordance with section 7502. If the personal representative is aware of other nonprobate transfers that may be liable for claims and allowances, then, unless the will provides otherwise, the personal representative shall proceed to collect the deficiency in a manner reasonable under the circumstances so that each nonprobate transfer, including those made under a trust described in section 7501(1), bears a proportionate share or equitable share of the total burden.

[¶ 19] Section 700.7501(1), Mich. Comp. Laws, which is currently recodified at Mich. Comp. Laws § 700.7605(1) with minor changes not relevant to this case, dealt with revocable trust property available for payment of certain expenses, allowances, and claims and provided:

(1) The property of a trust over which the settlor has the right without regard to the settlor's mental capacity, at his or her death, either alone or in conjunction with another person, to revoke the trust and revest principal in himself or herself is subject to all of the following, but only to the extent that the settlor's property subject to probate administration is insufficient to satisfy the following expenses, claims, and allowances:

(a) The administration expenses of the settlor's estate.

(b) An enforceable and timely presented claim of a creditor of the settlor,

including a claim for the settlor's funeral and burial expenses.

    (c) Homestead, family, and exempt property allowances.

Those provisions of Michigan law contemplate using property in a revocable living trust to pay administration expenses of a settlor's estate, funeral expenses, and homestead, family, and exempt property allowances. *See* Patricia Gormely Prince and Randall J. Soverinsky, *EPIC: Extending Probate Claims Procedures to Decedent's Revocable Living Trust*, 79 Mich. B.J. 340 (2000).

[¶ 20]  We conclude the district court's interpretation of the plain language of Maurice Wicklund's will and the Trust correctly applied his intent in conjunction with the applicable Michigan law. Because the plain language of the will and the Trust and Michigan law controls the disposition of the property, it is not necessary to consider the surviving children's argument that the Trust constitutes a deed of the mineral interests to the Trust. *See Chebatoris*, 757 N.W.2d at 214–17 (settlor purported to fund trust with real and personal property described in appendix attached to trust document and court held trust document operated as deed transferring property to trust). Similarly, because the plain language of the pour-over will and the Trust and Michigan law effectuate Maurice Wicklund's intent, it is not necessary to consider the surviving children's argument about the imposition of a resulting trust for his claimed intent. We conclude the district court did not err in effectively construing the estate plan under Michigan law to effectuate Maurice Wicklund's intent.

### III

[¶ 21]  We therefore consider arguments by Brian Wicklund and Deborah Williams about Betty Wicklund's claims

for an elective share, allowances, and administration expenses. The surviving children argue the district court erred in calculating Betty Wicklund's elective share, homestead allowance, exempt property allowance, family allowance, personal representative fees, and administration costs. They argue the court's findings are inadequate to understand the bases for its decision and there is a lack of evidence to support the court's decision.

[¶ 22]  We review factual findings in a probate proceeding under the clearly erroneous standard of review in N.D.R.Civ.P. 52(a). *In re Estate of Haugen*, 2011 ND 28, ¶ 15, 794 N.W.2d 448. " 'A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, we are left with a definite and firm conviction a mistake has been made.' " *Id.* (quoting *In re Estate of Hass*, 2002 ND 82, ¶ 15, 643 N.W.2d 713). Under N.D.R.Civ.P. 52(a)(1), in an action tried on the facts without a jury, the court must find the facts specially and state its conclusions of law separately. A district court must make findings of fact and conclusions of law that are sufficient to enable an appellate court to understand the factual determinations made by the district court and the basis for its conclusions of law. *Haugrose v. Anderson*, 2009 ND 81, ¶ 7, 765 N.W.2d 677. A district court's findings of fact should be stated with sufficient specificity to assist the appellate court's review and to afford a clear understanding of the district court's decision. *Id.*

[¶ 23]  Section 700.3805, Mich. Comp. Laws, which is similar to N.D.C.C. § 30.1–19–05, and Mich. Comp. Laws § 700.7501, which is currently promulgated at Mich. Comp. Laws § 700.7605, outline the priority for claims against an estate with insufficient applicable assets to pay all claims in

full, and as relevant to this case, provides for payment in the following order: (1) costs and expenses of administration; (2) reasonable funeral and burial expenses; (3) homestead allowance; (4) family allowance; (5) exempt property allowance; (6) reasonable and necessary medical and hospital expenses of the decedent's last illness; and (7) all other claims.

## A

[¶ 24] Under Michigan law and N.D.C.C. § 30.1–19–05, the assets of an estate may be used for the payment of costs and expenses of administration. Here, the district court determined that Maurice Wicklund's personal representative, Betty Wicklund, was entitled to reimbursement for costs and expenses of administration exceeding $30,000 without specifying an amount for those costs. A personal representative is entitled to costs and expenses of administration under both Michigan and North Dakota law. The district court's decision does not provide an adequate basis to understand or review the administration costs and expenses allowed. We conclude a remand is necessary for an explanation and determination of the amount of costs and expenses of administration.

## B

[¶ 25] Under N.D.C.C. § 30.1–18–19, a personal representative is entitled to reasonable compensation for the personal representative's services. *See also* Mich. Comp. Laws § 700.3719(1) (personal representative entitled to reasonable compensation for services). Here, the district court stated that Betty Wicklund, as personal representative of the estate, was allowed to claim her personal representative fees in a "reasonable amount." However, the court's decision does not otherwise provide a dollar amount of those services

or explain how those personal representative's fees were calculated. The court's decision is inadequate to understand the basis for the award, and we conclude a remand is necessary for a determination of the amount of personal representative fees.

## C

[¶ 26] Under N.D.C.C. § 30.1–07–00.1, "[t]he rights to homestead allowance, exempt property, and family allowance for a decedent who dies not domiciled in this state are governed by the law of the decedent's domicile at death."

### 1

[¶ 27] Under Mich. Comp. Laws § 700.2402, the spouse of a decedent dying in 2009 while domiciled in Michigan was entitled to a homestead allowance of $20,000. *See also* Mich. Comp. Laws § 700.1210. Here, the district court granted Betty Wicklund a homestead allowance of $20,000. Under Mich. Comp. Laws § 700.2405(1), the homestead property allowance shall not be satisfied with specifically devised property unless the estate is otherwise insufficient to satisfy the allowance. *See also* Mich. Comp. Laws § 700.7501 currently recodified at Mich. Comp. Laws § 700.7605 (authorizing use of property in revocable trust to satisfy homestead allowance). Michigan law thus allows the homestead allowance to be satisfied from specifically devised property in some circumstances and does not preclude the homestead allowance from being satisfied out of Maurice Wicklund's North Dakota mineral interests. Other courts have recognized that a homestead allowance may be satisfied from any type of property, including assets other than a dwelling or land. *See In re Estate of Martelle*, 2001 MT 194, ¶¶ 25–26, 306 Mont. 253, 32 P.3d 758 (homestead allowance is an allowance which may be satisfied in any type of

property and can be claimed from assets other than the dwelling house or land). We reject the children's claim the homestead allowance must be satisfied from a homestead, and we conclude the court did not err in awarding Betty Wicklund $20,000 as a homestead allowance under Michigan law.

### 2

[¶ 28] Under Michigan law, the surviving spouse of a decedent dying in 2009 while domiciled in Michigan was entitled to a presumptively reasonable family allowance of $24,000. *See* Mich. Comp. Laws § 700.2403, Mich. Comp. Laws § 700.2405; Mich. Comp. Laws § 700.1210. The family allowance provides for the surviving spouse during the administration of the estate, and the determination of reasonableness involves consideration of all relevant facts and circumstances. *See In re Estate of Seymour*, 258 Mich.App. 249, 671 N.W.2d 109, 113–16 (2003). Setting the family allowance is within the court's sound discretion, but the court should consider the surviving spouse's needs and the value of the estate. *Id.* at 113–14. The district court's findings and this record are sufficient to understand the basis for the award of the family allowance, and we conclude the court did not abuse its discretion in awarding Betty Wicklund $24,000 for a family allowance under Michigan law.

### 3

[¶ 29] Under Michigan law, the surviving spouse of a decedent dying in 2009 while domiciled in Michigan was entitled to an exempt property allowance of $13,000. *See* Mich. Comp. Laws §§ 700.2404; 700.1210. The exempt property allowance must first be satisfied with personal property, but to the extent personal property is insufficient, the allowance can be satisfied with other assets. *See*

Mich. Comp. Laws § 700.2405. The district court's findings and this record are sufficient to understand the basis for its award of $13,000 for an exempt property allowance, and we conclude the court did not clearly err in awarding Betty Wicklund $13,000 for an exempt property allowance.

### D

[¶ 30] Under N.D.C.C. § 30.1–05–01(4), "[t]he right, if any, of the surviving spouse of a decedent who dies domiciled outside this state to take an elective share in property in this state is governed by the law of the decedent's domicile at death." Section 700.2202(2), Mich. Comp. Laws, deals with the elective share for a surviving spouse of a decedent who was domiciled in Michigan and died testate and provides:

(2) The surviving spouse of a decedent who was domiciled in this state and who dies testate may file with the court an election in writing that the spouse elects 1 of the following:

(a) That the spouse will abide by the terms of the will.

(b) That the spouse will take ½ of the sum or share that would have passed to the spouse had the testator died intestate, reduced by ½ of the value of all property derived by the spouse from the decedent by any means other than testate or intestate succession upon the decedent's death.

(c) If a widow, that she will take her dower right under sections 1 to 29 of 1846 RS 66, MCL 558.1 to 558.29.

. . . .

(7) As used in subsection (2), "property derived by the spouse from the decedent" includes all of the following transfers:

(a) A transfer made within 2 years before the decedent's death to the ex-

tent that the transfer is subject to federal gift or estate taxes.

(b) A transfer made before the date of death subject to a power retained by the decedent that would make the property, or a portion of the property, subject to federal estate tax.

(c) A transfer effectuated by the decedent's death through joint ownership, tenancy by the entireties, insurance beneficiary, or similar means.

[¶ 31] Under Michigan law, for a decedent dying in 2009 while domiciled in Michigan, the intestate share of a surviving spouse who is survived by descendants who are not descendants of the surviving spouse was $134,000, plus one-half of any balance of the intestate estate. *See* Mich. Comp. Laws §§ 700.1210 and 700.2102(1)(f) and (2). Under Michigan law, the elective right given to the surviving spouse may be exercised only against the probate estate with reductions for some property derived by the surviving spouse from the decedent by means other than testate or intestate succession. Mich. Comp. Laws § 700.2202(2)(b) and (7). *See* Sharla K. Raab, *A Comparative Analysis Between the Uniform Probate Code and Michigan's Estates and Protected Individuals Code*, 79 U. Det. Mercy L.Rev. 593, 601–03 (2002) (explaining difference between Michigan's use of probate estate as base figure for elective share and Uniform Probate Code's use of "augmented estate" as base figure for elective share).

[¶ 32] Here, the district court's decision states that Betty Wicklund, as surviving spouse of Maurice Wicklund, was allowed to claim her elective share in the amount of $67,000, plus one-fourth of the estate under Mich. Comp. Laws § 700.2202. The court's findings do not include any calculation for the reduction of one-half of the value of property derived by Betty Wicklund from Maurice Wicklund by any means other than testate or intestate succession upon his death, or for the addition of one-half of any balance of the intestate estate. The court's conclusory findings are inadequate to understand the basis for the court's decision about an elective share. We therefore conclude a remand is necessary for further findings to provide a basis for the court's decision on Betty Wicklund's elective share.

## E

[¶ 33] The district court's findings for Betty Wicklund's elective share, her personal representative fees, and the costs and expenses of administration of the estate are insufficient to understand the bases for the court's decision. We conclude a remand is necessary for further findings to explain the bases for the court's decision on those issues. On remand, the court has discretion to take additional evidence.

## IV

[¶ 34] We reverse and remand for further proceedings consistent with this opinion.

[¶ 35] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.