2014 ND 64

**In the Matter of the ESTATE OF Maurice M. WICKLUND, deceased.**

**Betty J. Wicklund, Petitioner and Appellee**

v.

**Brian Wicklund and Deborah Williams, Respondents and Appellants.**

**No. 20130181.**

Supreme Court of North Dakota.

April 3, 2014.

Kathleen K. Imes (argued), Williston, N.D., and Christopher T. Lindsay (on brief), Northville, MI, for petitioner and appellee.

Elizabeth L. Pendlay (argued), Crosby, N.D., and Toni M. Sandin (on brief), Fargo, N.D., for respondents and appellants.

SANDSTROM, Justice.

[¶ 1] Brian Wicklund and Deborah Williams, the surviving children of Maurice Wicklund, appeal from an order granting Betty Wicklund's petition for an elective share, personal representative fees, attorney fees, and funeral and last illness expenses from Maurice Wicklund's estate after remand in *Estate of Wicklund*, 2012 ND 29, 812 N.W.2d 359. The surviving children argue the district court erred in awarding Betty Wicklund an elective share of $52,911.32, personal representative fees of $10,000, attorney fees and administration costs of $53,411.03, and funeral and last illness expenses of $15,414. We conclude the court did not abuse its discretion in granting Betty Wicklund's petition, and we affirm.

I

[¶ 2] When Maurice Wicklund died at the age of 94 in September 2009, he owned mineral interests in Sargent, Mountrail, Burke, and Divide Counties in North Dakota, and he and his surviving spouse, Betty Wicklund, were domiciled in Michigan, near Betty Wicklund's daughter from a prior marriage, Sandra Miller. Maurice and Betty Wicklund had been married for 16 years and had no children together. Brian Wicklund and Deborah Williams are his adult children from a prior marriage.

[¶ 3] In *Wicklund*, 2012 ND 29, ¶¶ 3–4, 812 N.W.2d 359, we described the creation of Maurice and Betty Wicklund's joint estate plan:

On August 22, 2006, Maurice and Betty Wicklund executed a joint estate plan, including Maurice Wicklund's will and the Maurice M. Wicklund and Betty J. Wicklund Living Trust. There were no amendments to Maurice Wicklund's will or to the Trust before his death. Maurice Wicklund's will appointed Betty Wicklund as his personal representative, directed his personal representative to pay his debts and the expenses of his last illness, devised his personal property to Betty Wicklund, and devised the residue of his estate to Betty Wicklund, as trustee of the Living Trust, to be disposed of as provided in the Trust agreement. His will directed the trustee to comply with the provisions of the Trust agreement for payment of expenses of administration, allowances, and claims allowed. His will also stated that he had not forgotten Brian Wicklund and Deborah Williams and had intentionally omitted to provide for them.

The Living Trust named Maurice and Betty Wicklund as the trust settlors and appointed the settlors, or either of them, as trustee. The Trust allowed the settlors to make contributions to the Trust, but the record does not reflect any conveyances to the Trust during Maurice Wicklund's lifetime. The Trust generally granted the trustee authority over any property held by the Trust and authorized the trustee to disburse income and principal as directed by the settlors during their lifetime, or by the

surviving settlor during his or her lifetime. The Trust authorized the trustee "to pay all expenses of administration, allowances, and claims allowed in the estate of either" settlor, and if there was no estate subject to probate administration, "to pay all expenses, allowances, and claims pertaining to settlor's estate related to the non-probate estate" of either settlor. The Trust explicitly authorized the settlors to amend or revoke the Trust during their lifetime and also authorized the surviving settlor to amend or revoke the Trust after the death of the other settlor.

[¶ 4] The parties agree Maurice Wicklund did not convey his North Dakota mineral interests to the Trust during his lifetime, and after he died in September 2009, his will was admitted for informal probate in North Dakota in April 2010. Betty Wicklund was appointed as personal representative of the estate, and she thereafter petitioned the North Dakota probate court for an elective share, statutory allowances, personal representative fees, and administration costs under Michigan law. The district court initially awarded Betty Wicklund an elective share of $67,000 plus one-fourth of Maurice Wicklund's estate, a homestead allowance of $20,000, an exempt property allowance of $13,000, a family allowance of $24,000, a reasonable amount of personal representative fees, and reimbursement for costs of administration, attorney fees, last illness, funeral, medical and hospital expenses in an amount exceeding $30,000. The court awarded Betty Wicklund title to Maurice Wicklund's North Dakota mineral interests as an in-kind payment for her allowances and claims, which the court found exceeded the estate's fair market value of $138,500 at the time of his death.

[¶ 5] In *Wicklund*, 2012 ND 29, ¶¶ 9–20, 812 N.W.2d 359, we construed documents in Maurice and Betty Wicklund's joint estate plan, including Maurice Wicklund's pour-over will and the couple's Trust agreement, to provide for the surviving spouse during his or her lifetime and to authorize the trustee to pay all expenses of administration, allowances, and claims allowed in the probate of the estate of either settlor. We concluded:

Maurice Wicklund's will provided a pour-over mechanism upon his death for the mineral interests to transfer to the Trust through the residue of his estate to be administered and disposed of in the manner provided in the Trust. The plain language for administration of the Trust provides for a revocable trust during the lifetime of both Maurice and Betty Wicklund, or the surviving spouse to provide them with income and principal from the Trust during their lifetimes. That plain language further provides for payment of all administration expenses, allowances, and claims relating to the probate or non-probate estate of either settlor.

The plain language of the will and the Trust, construed together, evidences an intent to pay administration costs and expenses, allowances, and claims allowed in the estate of either settlor, or if there was no estate subject to probate administration, to pay all expenses, allowances, and claims related to the non-probate estate before triggering any specific conveyance of Maurice Wicklund's mineral interests. The language creating a revocable trust during the lifetime of both settlors, or during the lifetime of the surviving settlor further evidences the settlors' intent to provide for a surviving settlor during his or her lifetime. The plain language distributed upon his death, the plain language of the will and the Trust permits the settlors, or the surviving settlor, to use the property in the Trust for their benefit and at their

discretion during their lifetime. The Trust language pertaining to the mineral interests does not explicitly require distribution upon Maurice Wicklund's death; rather, the language for the minerals refers to the disposition of "[a]ny and all interest of settlor, or either of the persons herein designated as settlor, or this trust." We construe the language of the Trust, as a whole, to evidence an intent to subject the mineral interests to the Trust provisions during the lifetime of the surviving settlor, including the language authorizing the trustee to distribute the original investment together with additions and accumulations in accordance with the Trust and as directed by the persons designated as settlor or the surviving settlor and the language directing the trustee to pay all expenses of administration, allowances, and claims allowed in the probate estate or non-probate estate of either of the persons designated as settlor. *Id.* at ¶¶ 15–16. We affirmed the district court's award to Betty Wicklund of $20,000 for a homestead allowance, $24,000 for a family allowance, and $13,000 for an exempt property allowance. *Id.* at ¶¶ 1, 27–29. We concluded, however, the court's findings were not adequate to understand the rationale for its decision on her claim against her husband's estate for an elective share, administration costs, and personal representative fees, and we remanded for further findings on those issues. *Id.* at ¶¶ 1, 24–25, 32–33.

[¶ 6] After an evidentiary hearing on remand, the district court determined Betty Wicklund was entitled to: (1) $52,911.32 for her elective share; (2) $53,411.03 for attorney fees and administration costs; (3) $10,000 for personal representative fees; and (4) $15,414 for funeral and last illness expenses. Because the total monetary award to Betty Wicklund for statutory allowances and expenses exceeded the value of Maurice Wicklund's estate at his death, as found by the district court to be $138,500, the court again distributed the mineral interests to Betty Wicklund in-kind.

[¶ 7] The district court had jurisdiction under N.D. Const. art. VI, § 8, and N.D.C.C. §§ 27–05–06 and 30.1–02–02. The appeal is timely under N.D.R.App.P. 4(a). This Court has jurisdiction under N.D. Const. art. VI, §§ 2 and 6, and N.D.C.C. §§ 28–27–02 and 30.1–02–06.1.

II

[¶ 8] The surviving children argue the district court erred in excluding from its elective share calculation about $45,000 in income from the mineral interests after Maurice Wicklund's death and in awarding Betty Wicklund $53,411.03 for administration costs and attorney fees, $10,000 for personal representative fees, and $15,414 for funeral and last illness expenses.

A

■ [¶ 9] We initially consider the surviving children's argument the district court erred in awarding Betty Wicklund $15,414 for funeral and last illness expenses. They claim Miller, who was not the estate's personal representative, paid those expenses from her own funds and failed to file a timely creditor claim against the estate under N.D.C.C. § 30.1–19–04. They argue Miller should not be reimbursed for the funeral and last illness expenses absent a timely creditor's claim against the estate.

[¶ 10] Maurice Wicklund's will appointed Betty Wicklund as the personal representative of his estate and directed the personal representative to pay his debts and the expenses of his last illness. The court appointed Betty Wicklund as personal representative of the estate. The defini-

tion of personal representative under N.D.C.C. § 30.1–01–06(40) includes an executor, and N.D.C.C. § 30.1–18–01 identifies the accrual of powers and duties of a personal representative:

> The duties and powers of a personal representative commence upon appointment. The powers of a personal representative relate back in time to give acts by the person appointed which are beneficial to the estate occurring prior to appointment the same effect as those occurring thereafter. Prior to appointment, a person named executor in a will may carry out written instructions of the decedent relating to the decedent's body, funeral, and burial arrangements. A personal representative may ratify and accept acts on behalf of the estate done by others if the acts would have been proper for a personal representative.

Additionally, N.D.C.C. § 30.1–18–15(18) authorizes a personal representative to pay expenses incident to the administration of an estate. Michigan law identifies similar powers and duties for a personal representative. *See* Mich. Comp. Laws §§ 700.1106 (definition of personal representative); 700.3701 (commencement of personal representative's duties and powers); 700.3715 (personal representative's authority). As the individual appointed as personal representative in Maurice Wicklund's will, Betty Wicklund was authorized to pay Maurice Wicklund's funeral and last illness expenses under his will and relevant statutory provisions, and the surviving children have cited no authority precluding a personal representative from being paid for those expenses without filing a claim against the estate.

[¶ 11] When Maurice and Betty Wicklund executed their joint estate plan in August 2006, Betty Wicklund executed a durable power of attorney appointing her husband as her attorney-in-fact, and if he died, she appointed Miller as her attorney-in-fact. Betty Wicklund's power of attorney gave her attorney-in-fact broad power, including to make gifts from and withdraw income and principal from the Trust, and to claim an elective share and statutory allowances from Maurice Wicklund's estate. In April 2011, after Maurice Wicklund's will was admitted to probate in North Dakota, Betty Wicklund executed a "financial power of attorney," which revoked her prior power of attorney, and granted Miller full power and authority to do everything necessary to exercise any of the powers granted by the document. Betty Wicklund's financial power of attorney gave Miller full power of substitution or revocation and ratified and confirmed all acts that Miller shall lawfully do or cause to be done, including the right to employ and compensate attorneys, to prosecute and defend all claims and actions, to pay all reasonable expenses for management of Betty Wicklund's property, to pay Betty Wicklund's debts and expenses, and to exercise Betty Wicklund's rights under the Trust agreement.

[¶ 12] At the evidentiary hearing, there was evidence Miller paid Maurice Wicklund's funeral and last illness expenses, which the surviving children stipulated were $15,414, while the powers of attorney were in effect. There was evidence that in May 2011, Betty Wicklund was 82 years old. According to Betty Wicklund, Miller helped her with financial matters both before and after Maurice Wicklund's death. According to Miller, her mother asked her to assist with "funeral arrangements, etcetera" for Maurice Wicklund because Betty Wicklund "was unable to do that." Under these circumstances, we conclude the district court's order authorizing payment of funeral and last illness expenses is supported by the evidence.

[¶ 13] This Court's decision in *Estate of Frandson*, 383 N.W.2d 807 (N.D.1986), does not require a different result. In *Frandson*, at 808, this Court affirmed the denial of a surviving spouse's claim against his wife's estate for funeral and medical expenses on the ground the claim was untimely filed. This Court rejected several arguments by the surviving spouse for payment of those expenses, including the estate was equitably estopped from relying on the time limitation statute, the time limitation was tolled by the probate court's failure to formally appoint a personal representative for the estate, and a provision in the decedent spouse's will required the payment of funeral and last illness expenses and made it unnecessary for the surviving spouse to file a claim against the estate. *Frandson*, at 808–10. This Court said the general direction in the will for payment of funeral and medical expenses did not create an express trust for the payment of those expenses to a specific creditor and did not obviate the necessity of filing a claim for medical or funeral expenses within the statutory time period. *Id.* at 810. This Court explained the claim statute was "intended to give finality to probate proceedings and to enable the personal representative of the deceased to close the estate without risk of liability for having overlooked a legitimate debt or claim." *Id.* (quoting *Estate of Bachand*, 307 N.W.2d 140, 144 (S.D.1981)).

[¶ 14] In *Frandson*, the surviving spouse was not entitled to property from his deceased wife's estate as an omitted spouse, and the surviving spouse was not the decedent's personal representative. 383 N.W.2d at 808. In that case, the surviving spouse made no argument about his right to payment for funeral and last illness expenses in his capacity as personal representative. *Id.* at 808–10. Moreover, in that case the surviving spouse was continuously involved in litigation with the appointed personal representative after the decedent spouse's death. *Id.* at 809. *See also Estate of Frandson*, 356 N.W.2d 125, 126 (N.D.1984) (affirming judgment that surviving spouse was not omitted spouse). We conclude *Frandson*, 383 N.W.2d at 808–10, does not control the right to funeral and last illness expenses in this case, and the district court did not err in ordering payment from Maurice Wicklund's estate for those expenses.

B

[¶ 15] Relying on *Estate of Rohrich*, 496 N.W.2d 566 (N.D.1993), the surviving children argue the district court erred in awarding Betty Wicklund $53,411.03 for administration costs and attorney fees and $10,000 for personal representative fees. They argue Betty Wicklund is not entitled to personal representative fees and attorney fees involved in her claim for an elective share, because that claim is for her own benefit and is not for the benefit of the estate.

[¶ 16] "A personal representative is entitled to reasonable compensation for the personal representative's services." N.D.C.C. § 30.1–18–19. *See* Mich. Comp. Laws § 700.3719 (personal representative entitled to reasonable compensation for services rendered). Under N.D.C.C. § 30.1–18–20, a personal representative is entitled to necessary expenses and disbursements from the estate, including reasonable attorney fees, for prosecuting or defending any proceeding. *See* Mich. Comp. Laws § 700.3720 (personal representative entitled to expenses and disbursements, including reasonable attorney fees for good-faith defense or prosecution of proceeding). "The review of fees paid or taken by the personal representative is left to the sound discretion of the district court." *Estate of Cashmore*, 2010 ND 159,

¶ 19, 787 N.W.2d 261. "We will not overturn the district court's decision on a personal representative's reasonable compensation absent a showing of an abuse of discretion." *Id.* "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or when it misinterprets or misapplies the law." *Id.* at ¶ 21.

[¶ 17] Some courts have recognized a surviving spouse may not be entitled to attorney fees incurred in pursuing an elective share, because the granting of an elective share depletes the estate for the beneficiaries. *See Tillman v. Smith*, 526 So.2d 730, 733–36 (Fla.Dist.Ct.App.1988) (attorneys not entitled to fees from estate for surviving spouse claim for elective share that depleted estate because elective share was detrimental to estate and contrary to testator's intent expressed in will); *Estate of Chrisp*, 276 Neb. 966, 759 N.W.2d 87, 99–100 (2009) (surviving spouse not entitled to attorney fees for pursuing claim to include decedent's nonprobate assets in augmented estate, because claim was personal to surviving spouse and would not have benefited estate); *Dowling v. Rowan*, 270 Va. 510, 621 S.E.2d 397, 402–03 (2005) (unambiguous premarital agreement constituted express waiver of surviving spouse's right to certain property under elective share claim, and surviving spouse was not entitled to attorney fees related to elective share litigation where litigation was contrary to testator's intent).

[¶ 18] In *Rohrich*, 496 N.W.2d at 570–74, this Court considered an award of attorney fees to a beneficiary who was not the decedent's named personal representative but whose actions ultimately resulted in the proper administration of the estate. This Court distinguished between an award of attorney fees to a personal representative and to a beneficiary and concluded there was no statutory authority to award attorney fees to a beneficiary:

In deciding whether to award attorney fees out of a decedent's estate, we generally determine whether the personal representative acted in good faith either in propounding the will to probate or defending it. Moreover, we have focused on whether a litigant's actions benefited the estate or whether the action was brought or defended in order to benefit only one person or a group of persons. If a personal representative's actions do not benefit the entire estate but instead are done to merely benefit himself personally, then his fees are generally disallowed. Because an attorney employed by a beneficiary usually seeks to benefit only his or her client and not the entire estate, regardless of their professed motives or resulting outcome, attorney fees are disallowed.

*Rohrich*, at 570–71 (citations omitted). This Court nevertheless sustained an award of attorney fees under the "common fund" theory to a beneficiary whose actions resulted in the proper administration of the estate. *Id.* at 571–73. The surviving children's reliance on language from *Rohrich* is misplaced because that case did not involve attorney fees for a personal representative's actions.

[¶ 19] In *Estate of Peterson*, 1997 ND 48, ¶ 25, 561 N.W.2d 618, this Court explained that to justify attorney fees from an estate, the personal representative's actions must be made in good faith, free from fraudulent intent, and for the benefit of the estate. We described the meaning of "for the benefit of the estate":

A benefit to the estate includes a personal representative's good faith attempts to effectuate the testamentary intent set forth in a facially valid will. *[Estate of] Flaherty*, 484 N.W.2d [515,] 518 [ (N.D.1992) ]. The personal repre-

sentative must seek to give effect to the testamentary intent expressed in a facially valid will regardless whether the personal representative is also a beneficiary under the will. *See Flaherty.*

*Peterson*, at ¶ 26. This Court's decision in *Peterson* recognizes a personal representative may take good-faith actions to effectuate a testator's testamentary intent and recover attorney fees for those actions. *Id.* at ¶¶ 25–26. We review a district court's decision awarding a personal representative attorney fees under the abuse-of-discretion standard, and a court's underlying findings on matters involving those issues will be upheld unless clearly erroneous. *Id.* at ¶ 18.

[¶ 20] Betty Wicklund's claims and the surviving children's objections to her claims involve the determination of her statutorily authorized elective share, other allowances, administration expenses, and personal representative fees. The district court quoted language about Maurice Wicklund's testamentary intent from this Court's decision in *Wicklund*, 2012 ND 29, ¶ 16, 812 N.W.2d 359, and decided her claims were in pursuit of his testamentary intent. Maurice Wicklund's testamentary intent, as determined in the prior appeal, was to provide for his surviving spouse during her lifetime and is the law of the case. *See Riverwood Commercial Park, LLC v. Standard Oil Co., Inc.*, 2007 ND 36, ¶ 12, 729 N.W.2d 101. Betty Wicklund's pursuit of an elective share is congruent with Maurice Wicklund's testamentary intent, as recognized in this Court's prior decision. On this record and our deferential standard of review of an award of attorney fees, we conclude the district court did not abuse its discretion in awarding Betty Wicklund $53,411.03 for attorney fees and administration costs.

C

[¶ 21] The district court also awarded Betty Wicklund $10,000 for personal representative fees. The court evaluated the evidence offered by Betty Wicklund, including her deposition testimony, the powers of attorney, and the itemization of the hours and work done on behalf of the estate, in view of Maurice Wicklund's testamentary intent. On this record, we cannot say the court's decision was arbitrary, capricious, or unreasonable, or a misapplication of the law. We conclude the court did not abuse its discretion in awarding Betty Wicklund $10,000 for personal representative fees.

D

[¶ 22] In view of our decision on the preceding issues, the value of the property in the estate and the claimed income to the estate after Maurice Wicklund's death are such that it is not necessary to determine whether the district court erred in excluding from the court's elective share calculation about $45,000 in income from the mineral interests after Maurice Wicklund's death. The surviving children claim that income should be included in the intestate estate, which would result in a gross estate of $183,810.58. The district court's analysis of the elective share, however, follows this Court's instructions on remand in *Wicklund*, 2012 ND 29, ¶¶ 30–32, 812 N.W.2d 359. As the district court explained, even if the income is included in the estate, the values are such that Betty Wicklund's claims of about $188,763 entitle her to distribution of the entire estate in-kind. The district court's calculation of the elective share followed this Court's instructions on remand in *Wicklund*, and we conclude the court did not err in its determination of Betty Wicklund's elective share.

### III

[¶ 23] We affirm the district court order.

[¶ 24] CAROL RONNING KAPSNER, and LISA FAIR McEVERS, JJ., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.

CROTHERS, Justice, concurring in part and dissenting in part.

[¶ 25] I concur with that part of the majority opinion affirming Betty Wicklund's right to an elective share. I respectfully dissent from the remainder of the decision.

[¶ 26] The district court ordered that Betty Wicklund recover $15,414 for payment of funeral expenses. The majority affirms. Unfortunately, there does not appear to be a factual or legal basis to obtain the majority's result.

[¶ 27] A factual basis is lacking because the expenses were actually paid by Betty Wicklund's daughter, Sandra Miller, out of Miller's funds. Yet the majority seems to suggest the expenses were paid by or on behalf of Betty Wicklund and are reimbursable to her under N.D.C.C. §§ 30.1–01–06(40) and 30.1–18–01 as expenditures made by an executor or personal representative. Majority opinion at ¶¶ 10–12.

[¶ 28] Uncontroverted evidence establishes that Betty Wicklund was the personal representative but that she did not pay the expenses. Betty Wicklund did not have funds to pay the expenses, so they were paid by Miller. The district court found, "Betty proved by a preponderance of the evidence the basis for, and the explanation of, the funeral and last illness expenses of $15,414.00 (Exhibit 7), and she is entitled to full reimbursement for them." Exhibit 7 is an expense summary supported by receipts showing payments by Miller rather than Betty Wicklund.

[¶ 29] The district court and the majority jump over the fact the expenses were paid by Miller and not Betty Wicklund on the theory Miller held Betty Wicklund's power of attorney. Majority opinion at ¶¶ 10–12. However, that justification is unavailing because the power of attorney provided Miller with authority to act *for* Betty Wicklund. The power of attorney did not grant Miller lawful authority to act *instead of* Betty Wicklund. The distinction is meaningful. *See Stuber v. Taylor*, 200 N.W.2d 276, 280 (N.D.1972) ("A power of attorney creates an agency relationship between the principal, the one conferring the power, and the agent, upon whom the power is conferred. It is not necessary for purposes of this discussion to define the myriad legal implications of a power of attorney. Suffice to say that because it is an agency relationship, the agreement by the agent to act on behalf of the principal causes the agent to be a fiduciary." (citation omitted)).

[¶ 30] Here, the funeral expenses were paid by Miller out of Miller's funds. Nothing shows the expenses were paid from Betty Wicklund's funds or on Betty Wicklund's behalf. Exhibit 7 proves the opposite. Moreover, Miller never contemporaneously claimed she was acting in a representative capacity. As a result, no facts support a finding that Miller paid the expenses on behalf of Betty Wicklund when Miller was exercising authority under the power of attorney. We therefore are left with the unusual, and I submit untenable, result that Betty Wicklund is being permitted to recover $15,414 that she did not spend, so that Betty Wicklund can reimburse a legal stranger to the estate who spent the money but who did not file a claim against the estate.

[¶ 31] This brings us to the legal deficiency in the majority opinion. Section 30.1–19–04, N.D.C.C., requires timely filing of creditor claims, which Miller admittedly did not submit. Miller paid funeral expenses which she had no legal duty to pay. She was neither the executor nor the personal representative of Maurice Wicklund's estate. Miller did not expend Betty Wicklund's funds in Miller's capacity as Betty Wicklund's power of attorney, nor did Miller pay the expenses while indicating she was acting in a representative capacity for the estate or Betty Wicklund. Therefore, while the district court's and the majority's result is eminently "fair," I am compelled to conclude we have neither the factual nor the legal basis to support it. Instead, because Miller did not file a creditor's claim, the result in this case is directed by our holdings in *Steen and Berg Co. v. Berg*, 2006 ND 86, ¶ 6, 713 N.W.2d 87; *Estate of Frandson*, 383 N.W.2d 807, 809–10 (N.D.1986).

[¶ 32] I also respectfully dissent from the majority's holding that Betty Wicklund was properly awarded $53,411.03 for administration costs and attorney fees. Majority opinion at ¶¶ 15–20. The evidence here is that many of Betty Wicklund's efforts in connection with the estate were dedicated to pursuing recovery of her elective share. I agree she was entitled to that relief. *See Estate of Wicklund*, 2012 ND 29, 812 N.W.2d 359. However, I would join those jurisdictions cited by the majority that hold recovery of fees and expenses is limited because the efforts depleted rather than increase the estate. *See* Majority opinion at ¶ 17 and the cases cited therein. I therefore would reverse and remand for determination whether Betty Wicklund was entitled to recover any expenses and fees utilized to discover, recover or preserve estate assets, as distinguished from expenses and fees incurred in efforts to secure her elective share.

[¶ 33] Finally, my substantive disagreements with the majority prevent me from agreeing with their rationale for affirming allocation of $45,000 of post-death income from mineral interests. *See* Majority opinion at ¶ 22. The question whether and to what extent an elective share includes a percentage of income received during administration of the estate is complex in its own right. The answer here is complicated because Maurice Wicklund died domiciled in Michigan while his principal asset was in North Dakota. Therefore, Betty Wicklund's rights to an elective share must be decided under Michigan law. N.D.C.C. § 30.1–05–01(4) ("The right, if any, of the surviving spouse of a decedent who dies domiciled outside this state to take an elective share in property in this state is governed by the law of the decedent's domicile at death.").

[¶ 34] Because I dissent, it is unnecessary and perhaps unwise to extensively predict how this issue would be decided were I writing for the majority, especially given the lack of clear Michigan precedent. I do note however that a majority of jurisdictions hold that income realized by an estate during administration generally is included in an elective share. *See* Charles C. Marvel, Annotation, *Extent of Rights of Surviving Spouse Who Elects to Take Against Will in Profits of or Increase in Value of Estate Accruing After Testator's Death*, 7 A.L.R.4th 989, § 2 (1981) ("[T]here appears to be no controversy that the electing survivor is entitled to share in whatever appreciation of the estate assets is realized between the date of the testator's death and the date of final distribution." (footnote omitted)).

[¶ 35] The general rule discussed in the annotation appears sprinkled with nuanced applications. For instance, a different ar-

ticle is dedicated to discussing how to calculate, and what charges are properly deducted from, an augmented estate. *See* John P. Ludington, Annotation, *Determination of, and charges against, "augmented estate" upon which share of spouse electing to take against will is determined under Uniform Probate Code § 2-202,* 63 A.L.R.4th 1173 (1988). Also, in *Green v. Nassif,* 426 Md. 258, 44 A.3d 321, 336 (2012), the court distinguished between an elective spouse receiving her statutory share in kind who is entitled to receive a proportionate amount of the appreciated assets, while an elective spouse opting for cash is limited to her percentage of the estate value on the date of election. The court in *In re Estate of Jenkins,* 8 S.W.3d 277, 286–288 (Tenn.Ct.App.1999), held the surviving wife's elective share included income generated by the decedent's property prior to distribution unless that income was attributable to an intellectual property asset that was sold during administration.

[¶ 36] For present purposes, it is sufficient to conclude that on remand I would require following the general rule to calculate the augmented estate. That calculation would include adding back the funeral expenses and whatever sums the district court finds Betty Wicklund did not expend to discover, recover or preserve estate assets, as distinguished from expenses and fees incurred in efforts to secure her elective share.

[¶ 37]   Daniel J. Crothers